UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PATRICK GEORGES,

        Petitioner,

-v-

UNITED STATES OF AMERICA,

        Respondent.
------------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
08-CV-3611 (CBA)

AMON, United States District Judge:

Patrick Georges, pro se, has filed a petition for a writ of habeas corpus, 28 U.S.C. § 2255, which asks the Court to set aside his conviction of conspiracy to transport firearms into New York State without being a licensed firearms importer, manufacturer, or dealer. 18 U.S.C. §§ 371, 922(a)(3). In support of his petition, Georges—who pleaded guilty to the charge of which he was convicted and waived his right to attack his conviction directly or indirectly—alleges that, in several respects, his attorneys were constitutionally ineffective and that parts of the description of his offense conduct contained in the presentence report are inaccurate.

For the reasons that follow, the Court denies the petition for a writ of habeas corpus.

## BACKGROUND

### A. Facts

At least as early as 2006, agents with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") in New York were conducting an investigation into illegal firearms trafficking. Georges became a target of the investigation after what the government describes in its papers as "a source known to law enforcement" told the agents that Georges sold firearms out of his Brooklyn barbershop. The source told the agents that he had previously introduced to Georges

1

individuals who were looking for guns in return for a referral fee of between $150 and $200.[1] Sometime before February 6, 2006, an individual whom the government refers to as a "confidential informant" told the agents that Georges was looking to sell ten revolvers.[2]

The agents arranged a buy through the informant and, on February 6, the informant, who was accompanied by an undercover agent, purchased ten handguns from Georges at his barbershop. A subsequent record check revealed that the handguns had been stolen on or about January 1, 2006 from a federal building in Atlanta. On February 9, 2006, the agents, again working on information from the confidential informant, bought seven more revolvers from Georges at his barbershop. These firearms too turned out to have been stolen from the Atlanta federal building on or about January 1, 2006.

ATF agents arrested Georges on August 3, 2006. After waiving his Miranda rights, Georges denied participating in the February firearms sales but later admitted that he sold seventeen revolvers to an undercover ATF agent. Georges said that he received the firearms from a man later identified as Andrew Spence, a security guard who worked at the Atlanta federal building. Georges told the officers that Spence had told him that the firearms were "hot," meaning stolen. After he was arrested, Georges, represented by counsel, assisted the ATF in its investigation of Spence, who was eventually arrested in March 2007. While he was assisting the government in their investigation of Spence and another man who was allegedly involved in the

---

[1] In his reply to the government's opposition brief, Georges identifies this source as Elliot Rivera.

[2] Georges identifies this informant as "Junior."

gun sales, Donald Lanes, Georges apparently recorded several conversations that he had with Spence, "Junior," and a police officer.[3]

Georges, Spence, and Lanes were indicted together on April 20, 2007. Count One of the indictment charged Georges, Spence, Lanes, and unnamed others with conspiring to (a) transport firearms into New York without being licensed firearms importers, manufacturers, or dealers and to (b) receive, possess, conceal, store, barter, sell, and dispose of stolen firearms and stolen ammunition knowing and having reasonable cause to believe that the firearms and ammunition were stolen. Count Two charged only Spence and Lanes with transportation of stolen firearms and ammunition. Counts Three through Twenty-One charged Georges, Spence, and Lanes with selling stolen firearms and ammunition. Count Twenty-Two charged Spence and Lanes with transportation of firearms into their state of residence.

On July 20, 2007, Georges, represented by attorney Gregory Watts, attempted to plead guilty, pursuant to an agreement with the government, to Count One before a magistrate judge.[4] The magistrate judge informed Georges of the consequences of pleading guilty. She also asked Watts whether he knew of "any reason why [his] client should not enter a plea of guilty" or whether he was "aware of any viable legal defense." Watts answered no to both questions. (Tr. at 15.) After Georges told the magistrate judge that he was "making a plea of guilty voluntarily and of [his] own free will," the magistrate judge asked him to describe what he had done in

---

[3] Georges asserts in his papers that these recordings establish that he did not know that the firearms that he conspired to transport and sell were stolen and also that he did not earn any money on the sales. Those recordings, which Georges provided with his habeas petition, do not clearly establish those facts.

[4] Lanes pleaded guilty to Count One in June 2007 and later received a sentence of 26 months imprisonment. Spence pleaded guilty to Count One in July 2007; he received a sentence of 24 months imprisonment.

3

connection with Count One. (Id. at 16.) He did, and the magistrate judge asked him whether he knew that the firearms were stolen. Georges said that he did not. (Id. at 17.)

The magistrate judge said that she thought that knowledge that the firearms were stolen was an element of the crime charged in Count One. Georges conferred with Watts, who then explained to the magistrate judge that Georges believed, based on the manner in which the firearms had been packaged and delivered to him, that the firearms were stolen. (Id.) The magistrate judge asked Georges if that was right and he said yes. (Id. at 18.) After Georges, in response to questions from the magistrate judge, again tried to explain his involvement in the crime charged in Count One, the magistrate judge refused to accept the plea. (Id. at 18–20.) The transcript of this plea hearing contains several notations of unintelligible remarks, so it is not clear precisely why the magistrate judge rejected the plea.

On October 23, 2007, Georges—then represented by attorney Douglas Rankin—again tried to plead guilty pursuant to an agreement, this time only to subpart (a) of Count One and in front of a different magistrate judge. The magistrate judge questioned Georges, who confirmed that he understood his rights and the consequences of his guilty plea. (Tr. at 5–6.) Rankin confirmed that he had discussed with Georges the consequences of the plea and the content of the agreement under which Georges was pleading. (Id. at 6–7.) Georges then confirmed that he had had "enough time to discuss [his] case with [his] attorney" and that he was "satisfied to have [his attorney] represent [him]." (Id. at 7.) Georges also confirmed that he had read the plea agreement, understood what it said, and had signed it on the last page. (Id. at 14.)

The magistrate judge asked Georges if he understood that in the plea agreement he had agreed not to "file an appeal or otherwise challenge [his] conviction or [his] sentence, so long as the Court impose[d] a term of imprisonment of 33 months or less." (Id. at 20.) Georges said that

4

he understood that fact. The magistrate judge then asked Rankin whether he knew of "any reason why the defendant should not plead guilty" or whether he was "aware of any viable legal defense to the charge." (Id. at 25.) Rankin answered no to both questions.

Georges then allocuted, stating that he received firearms from Spence that he knew were from out of state and that he agreed to sell the firearms for Spence. Georges confirmed that he was not a licensed firearms importer, manufacturer, or dealer and that he sold the firearms in Brooklyn. (Id. at 26–27.) The magistrate judge then found that "the defendant is acting voluntarily, fully understands his rights and the consequences of his plea, and that there is a factual basis for the plea" and stated that she would recommend to this Court that the plea be accepted. (Id. at 28.)

On November 5, 2007, Georges wrote the Court, stating, "I feel my plea needs to be reversed to 'not guilty.'" He wrote that his attorney "never researched [his] case on entrapment and advised [him] to take a plea because he had no defense." Georges then explained his belief—which was based on his own research, some of which he attached to the letter—that he did have a valid defense of entrapment to the crimes charged in the indictment.

The Court held a hearing to address Georges's letter on November 14. Rankin explained his client's position in this way: "He is saying that federal agents entrapped him or caused him or induced him to sell these guns on the two dates that are listed in the indictment." (Tr. at 3.) Rankin then explained that he did not believe the entrapment defense to be meritorious because he did not "see where the federal agents created a substantial risk that somebody who was not predisposed to commit a crime would commit a crime." (Id.) Moreover, Rankin was "not even sure based upon [his] conversations with [Georges] that the people, the person who induced him to be involved allegedly in the crime was a government agent." (Id.)

5

The Court asked Rankin and the government to explain the facts relevant to the entrapment defense, but neither party was able to describe them with sufficient clarity, in part because the government was "not comfortable" using confidential informant numbers and names "at this point" and also because, at the hearing, Georges was providing his attorney with information different from information he had previously provided him. (Id. at 3–4, 9, 11.) Both parties then requested an opportunity to write the Court to explain the facts. (Id. at 10.)

The Court asked Georges whether he still wanted Rankin to represent him and Georges said that he did. (Id.) The Court also asked Rankin whether he had enough information "to make an assessment as to whether [Georges] ha[d] a defense or not" and Rankin said that he did. (Id.) Rankin explained that he had met with Georges "no less than six times" and had listened, "from beginning to end," to the recordings that Georges prepared while he was cooperating after his arrest. (Id. at 10–11.) The Court granted the parties an opportunity to explain the entrapment defense, providing Rankin about two weeks to, in his words, "get a clear understanding as to exactly the factual nature that my client has indicated and is indicating to the Court right now." (Id. at 11.)

Rankin then wrote the Court on November 30, explaining that Georges "was induced by two non-government agents, Elliot Davis and David Jones, into becoming involved in the sale of guns for cash." He wrote that Davis and Jones were given the idea for the scheme by "Junior," who was "the confidential informant in this case." According to Rankin, "The crux of my client's defense of entrapment is that Junior lied to Elliot and David and then they unknowingly lied to my client resulting in his involvement." Rankin stated that he had explained to Georges that he could not avail himself of an entrapment defense because he had been induced to commit a crime by two unwitting middlemen who took it upon themselves to recruit Georges for the

6

crime. Rankin concluded by informing the Court: "At this time my client understands his rights and defenses and wishes to proceed to sentencing in this matter."

Georges again appeared before the Court on March 26, 2008. The Court began by stating that, although it had been informed earlier that Georges wanted to withdraw his plea, it had subsequently received a letter from Rankin stating that Georges did not want to withdraw his plea. The Court asked Georges if he still wanted to plead guilty and he answered yes. (Tr. at 3.) Rankin also confirmed that he had, pursuant to the Court's request, discussed the "possible defense of entrapment" with Georges and provided the Court with a letter about the issue. (Id.) Rankin said that there was no reason that the Court should not accept Georges's plea, which he was again entering pursuant to an agreement with the government. The Court accepted the plea, finding that "the defendant was advised of all of his constitutional rights in connection with waiving those rights and entering a plea of guilty and that there is a factual basis for the plea." (Id. at 4.)

Pursuant to the plea agreement between the parties, the government agreed to move for an acceptance of responsibility reduction, U.S.S.G. § 3E1.1(b); to take no position on where within the advisory guidelines range Georges's eventual sentence should fall; and not to move for an upward departure of any kind. For his part, Georges agreed not to appeal or to attack his conviction under section 2255.

The Court sentenced Georges on April 21, 2008. The Court began by addressing an issue that the parties had discussed at the March conference: the statement in the presentence report that Georges had been personally involved in an uncharged firearms sale that occurred in his barbershop in January 2006. Georges admitted that he was in his shop when the sale took place but denied that he had anything to do with it. (Tr. at 2.) The government elected not to try to

7

prove Georges's involvement in the sale, so the Court ruled that it would not consider the sale in imposing sentence. (Id.) Turning to the sentence that was to be imposed, Rankin asked that the Court impose a sentence of imprisonment that fell within the advisory guidelines range, which was 18 to 24 months. (Id. at 4.) The government asked for a guidelines sentence, too. (Id. at 5.)

The Court asked Georges if he wanted to say anything on his own behalf, and he stated: "I'm sorry getting himself [sic] into a situation. It hurts me every day, it hurts me. My son sees me [sic] remorse every day in this situation. I mean, I'm sorry to get myself in a situation knowing that these people were not even my friends. I'm really sorry." (Id. at 5–6.) The Court then sentenced Georges to serve a term of imprisonment of 18 months, to be followed by a three-year term of supervised release. (Id. at 7.) The Court then granted Rankin's request that Georges be permitted to surrender voluntarily at a later date, and to surrender directly to the institution at which he would serve his sentence.

### B. Section 2255 Petition

Georges did not file a direct appeal, but in August 2008 he filed a section 2255 petition for a writ of habeas corpus, which asserts two principal grounds for relief. First, the petition alleges that both Watts and Rankin rendered constitutionally ineffective assistance. It alleges that Watts was ineffective because he "wanted [Georges] to lie" at his first plea hearing and admit that he knew that the firearms involved in the crime of conviction were stolen. The petition alleges that Georges fired Watts because he had asked him to lie. The petition also alleges that Rankin was ineffective because he refused "to argue the rest of the [presentence report]" at the April sentencing. The petition further asserts that "[b]oth lawyers showed no efforts in doing any investigation" and that "leads back to the entrapment defense as an issue." Georges later filed what he styled a motion for default and described his ineffective assistance

8

sub-claims in different terms. The allegations are not entirely clear but Georges appears to argue that Watts and Rankin did not do enough to investigate his case, asserting principally that they could have proved that he did not know the firearms that he conspired to transport were stolen and also that he did not make any money on the firearms transactions.

As a second principal ground for relief the petition alleges that the presentence report "on the offense conduct about [Georges] are all erroneous." The petition identifies certain alleged misstatements of fact contained in the presentence report. Georges's subsequently filed motion for default identifies alleged inaccuracies in paragraphs 3, 5, 6, and 9 of the presentence report.

The government's response to Georges's petition asserts first that he "was sentenced within the parameters of the appeal waiver in the plea agreement, precluding an appeal or habeas petition on the issues he seeks to raise here." The government argues additionally that each of Georges's claims is meritless. It treats all of George's claims as sub-claims of one large ineffective assistance of counsel claim and argues that (1) Georges had no valid entrapment defense because he was predisposed to commit the crime of which he was convicted; (2) counsel argued that Georges had no knowledge of the fact that the firearms he transported were stolen; and (3) counsel raised reasonable objections to the presentence report.

Georges filed a reply in which he says that he was not predisposed to commit the crime of conviction, did not admit to conspiring to transport firearms upon his arrest, did not know that the guns he conspired to transport were stolen, and pleaded guilty because his attorneys did not have a defense to the charges against him. Georges also filed an addendum to his reply in which he states that "[f]rom the outset, and in his habeas petition, petitioner argued that 1) at the time of the firearms transaction, he had **no** knowledge that the firearms were stolen; 2) [t]hat his presentence report contained inaccurate and prejudicial information; and 3) [t]hat his Sixth

9

Amendment rights to effective assistance of counsel were violated whereas counsel performance fell below the objective standard of reasonableness."

## DISCUSSION

Georges's habeas petition presents one dispositive issue: whether his guilty plea "'represents a voluntary and intelligent choice among alternative courses of action open to [him].'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As the Court explains below, if Georges voluntarily and intelligently pleaded guilty and executed an appeal waiver that bars collateral attacks on his conviction and sentence, then he cannot press any of the arguments in support of relief that he has included in his section 2255 petition. After careful review of all of Georges's filings, the Court concludes that Georges voluntarily and intelligently pleaded guilty and executed an appeal waiver. The petition is denied.

### A. Voluntariness of the Plea

Georges's petition challenges the validity of his guilty plea on the ground that Rankin rendered constitutionally ineffective assistance when he recommended that Georges plead guilty to conspiring to transport firearms without a license. Georges asserts at various points in his petition and subsequent filings that he pleaded guilty because Rankin told him that he lacked a viable entrapment defense, asserting, for example, that when the Court "asked the defendant, if he wanted to go to trial. The defendant replied [no], based on his attorney's advisal because he had no defense." (Motion for Default at 3.) Georges also asserts throughout his petition that, contrary to the opinion he received from Rankin, he was entrapped. This bad advice, Georges urges, should invalidate his guilty plea.

10

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56 (internal quotation marks omitted); see also Panuccio v. Kelly, 927 F.2d 106, 111 (2d Cir. 1991). To establish that his attorney's advice fell without that range of competent performance, a habeas petitioner seeking to set aside his guilty plea must show that his attorney's advice was professionally unreasonable under the standard announced in Strickland v. Washington, 466 U.S. 668 (1984). Where a defendant pleads guilty because he has been advised that he should do so for lack of a viable affirmative defense, "[t]he likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea." Panuccio, 927 F.2d at 109.

Of course, even where a habeas petitioner challenges the validity of his guilty plea on the ground that his attorney was ineffective, courts must bear in mind that their review of the professional reasonableness of attorney actions is "highly deferential" and they must "operate with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688–89. Moreover, as in any case governed by Strickland, a petitioner must show not only that his attorney performed unreasonably but also that his attorney's unreasonable performance caused him prejudice. In this setting, that means that a petitioner must establish that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

11

Georges has not met his burden of establishing that Rankin's recommendation that he plead guilty to conspiring to transport firearms without a license was unreasonable within the meaning of the Sixth Amendment.

First, Georges has not established that Rankin's analysis, contained in his November 30 letter to the Court, that Georges could not assert an entrapment defense as a matter of law was at all inaccurate. He has not shown that Rankin misunderstood the facts of the case when he told the Court that Georges was persuaded to agree to transport firearms by two men who were unwittingly working with a government agent, and not by a government agent, either directly or indirectly. Indeed, Georges confirms that story at least insofar as it asserts that "Elliot Rivera (CS) and David Jones were the ones who introduced Junior (CI 152) to the Petitioner." (Pet. Reply at 2.) Moreover, for all the conclusory allegations in the petition that Rankin and Georges's other attorneys did not thoroughly investigate his case, there is no allegation—and no indication in the record—that any attorney should have acquired more facts relevant to the entrapment defense.

Georges also has not explained why Rankin's analysis of whether, on the facts as he understood them, Georges could assert an entrapment defense was flawed. And the Court is not persuaded that the analysis was. In the Second Circuit, a defendant who is not persuaded directly by a government agent to join a criminal undertaking is nonetheless entitled to assert an entrapment defense if "the government's inducement was directly communicated to the person seeking the entrapment charge by an unwitting middleman." United States v. Pilarinos, 864 F.2d 253, 256 (2d Cir. 1988) (internal quotation marks and brackets omitted). But "where a government agent 'induces a middleman to commit a crime, and the middleman, responding to the pressure upon him, takes it upon himself to induce another person to participate in the crime,'

the latter person is not entitled to a derivative entrapment defense." Id. (quoting United States v. Toner, 728 F.2d 115, 127 (2d Cir. 1984)) (citation omitted); see also United States v. Valencia, 677 F.2d 191 (1982) (husband who had been induced by his wife to commit a crime could not assert entrapment defense where wife had been induced by a government agent and, in turn, induced her husband without communicating to him the agent's inducements). Georges has not offered any reason to doubt that, as Rankin believed, Georges was induced to conspire to transport firearms (if he was induced at all) by Rivera and Jones, not Junior, directly or indirectly. Indeed, in all of his filings, Georges fails to engage this point.

Second, Georges has not established that, even if Valencia and similar cases did not foreclose his assertion of an entrapment defense, Rankin's plea recommendation was constitutionally unreasonable. As a general matter, "it is a matter of legal realism that such defenses rarely succeed." Isaraphanich v. United States, 632 F. Supp. 1531, 1534 (S.D.N.Y. 1986) (refusing to set aside habeas petitioner's guilty plea where petitioner's attorney advised him to plead guilty rather than assert a defense of entrapment). And the Court is "more than satisfied that an entrapment defense would not [have] be[en] likely to succeed at trial" in this case. Roman v. United States, 741 F. Supp. 43, 44 (E.D.N.Y. 1990) (refusing to set aside a guilty plea where defendant's attorney failed to raise an entrapment defense).

Most significantly, Georges has not adequately countered the government's contention that he "was predisposed to commit" the crimes with which he was charged, both because he readily agreed to participate in the firearms transporting enterprise when he was offered the opportunity and because there is evidence that he had previously brokered firearms transactions. United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995); United States v. Harvey, 991 F.2d 981, 994 (2d Cir. 1993) ("[I]t is not necessary that the past conduct be precisely the same as that

13

for which the defendant is being prosecuted."). Georges asserts that the government's evidence of his prior firearms dealings was weak, but he has not persuaded the Court that in the face of that and other evidence Rankin could not have doubted the strength of the entrapment defense enough to reasonably believe, as did the other attorneys who represented Georges, that the entrapment defense would not fare well at trial. See Strickland, 466 U.S. at 689 ("[T]he defendant must overcome the strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks omitted)).

Moreover, Georges has not shown that, even if his entrapment defense was stronger than Rankin believed, Rankin could not have thought, without running afoul of the Sixth Amendment, that Georges should plead guilty to avoid conviction on the other crimes with which he was charged, or at least to secure a more favorable sentence on the charge of conviction than he could have secured at trial. Roman, 741 F. Supp. at 44 (attorney who advised forgoing entrapment defense and pleading guilty not ineffective in part because the plea reduced sentence exposure).

In sum, Georges has not shown that he did not voluntarily and intelligently plead guilty to conspiring to transport firearms. Georges was assisted by able counsel who devoted considerable attention to the entrapment defense and both this Court and two magistrate judges fully advised him of his rights and the consequences of his guilty plea.

### B. Other Claims

The Court's conclusion that Georges voluntarily and intelligently pleaded guilty to the charge of which he was convicted, and executed an appeal waiver in connection with that plea, forecloses the other arguments in support of relief that Georges has included in his petition for a writ of habeas corpus.

Georges is not entitled to relief on the ground that Watts rendered constitutionally ineffective assistance by asking him to lie at his first plea hearing. The magistrate judge conducting that hearing rejected Georges's plea, apparently because she was not satisfied that Georges knew that the firearms that he conspired to transport and sell were stolen. Later, represented by a different attorney, Georges pleaded guilty to a different charge, which did not require knowledge that the firearms involved in this case were stolen. As the Court has said, that subsequent plea was voluntary and intelligent. And it is well settled that that voluntary guilty plea "waived all ineffective assistance claims relating to events prior to the guilty plea." United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996). Georges thus cannot assert any claims that "related to the legal assistance provided by his initial counsel prior to the guilty plea," such as the claim (the merits of which the Court does not assess) that Watts was ineffective for asking him to lie before the magistrate judge at his first plea hearing. Id. (defendant who pleaded guilty cannot challenge his original attorney's decision to stipulate to exclusion of time from the speedy trial clock; withdraw without requesting an adjournment of a pending speedy trial motion; or withdraw without preserving defendant's right to assert a speedy trial claim).

Georges also cannot complain about what he says are inaccuracies in the presentence report on which the Court relied in sentencing him or about Rankin's failure to argue about the report at sentencing. Again, Georges voluntarily pleaded guilty to the charge of conviction and, in connection with that plea, he voluntarily executed an appeal waiver in which he agreed not to attack his conviction if he received a sentence of incarceration that did not exceed 33 months. Georges received a sentence that did not exceed 33 months; indeed, he received a sentence that was at the very bottom of the range contained in the appeal waiver. There is no allegation that the government in any way breached the agreement. On these facts, just as Georges cannot

invalidate his plea based upon attorney conduct that occurred before the plea, he cannot invalidate his plea based upon attorney conduct that occurred after. Garcia-Santos v. United States, 273 F.3d 506, 508–09 (2d Cir. 2001) (habeas petitioner cannot challenge sentencing disparity or attorney's failure to argue the disparity because he voluntarily pleaded guilty and executed an appeal waiver and was sentenced within the range to which he agreed in that waiver).

To the extent that Georges's petition or other lengthy filings can be read to allege other constitutional violations by counsel or government agents, those errors do not entitle Georges to relief. Like the alleged errors discussed in this section, they do not, regardless of their merit, bear on the validity of Georges's guilty plea and they are not "jurisdictional" as that term is used in this context. See, e.g., Lebowitz v. United States, 877 F.2d 207, 209 (2d Cir. 1989) ("The settled rule is that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."); Hayle v. United States, 815 F.2d 879 (2d Cir. 1987).

## CONCLUSION

The petition for a writ of habeas corpus is denied. Because Georges has not made a "substantial showing of the violation of a constitutional right," no certificate of appealability shall issue. 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED

Dated: Brooklyn, New York
February 3, 2011

Carol Bagley Amon
United States District Judge